UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| T.L. DALLAS (SPECIAL RISKS), LTD., and GREAT LAKES REINSURANCE (UK) PLC INDIVIDUALLLY AND AS ASSIGNEES OF PAUL AND JANET SPIELVOGEL | § § § § § § | |
| **Plaintiffs,** | § § | |
| v. | § § | CIVIL ACTION NO. 3:07-cv-0419 |
| ELTON PORTER MARINE INSURANCE AGENCY, INC. and AMERICAN MARINE INSURANCE SERVICES, et al., | § § § § § | |
| **Defendants.** | § | |

## MEMORANDUM AND ORDER

Pending before the Court are Defendant Matthew Aldridge and Ken Collier's Motion to Dismiss for Failure to State a Claim and Motion for Sanctions (Doc. No. 20), and Stanley Hubbell's Motion to Dismiss for Lack of Personal Jurisdiction and for Failure to State a Claim. (Doc. No. 22.) After considering the parties' arguments and the relevant law, the Court finds that Hubbell's Motion should be granted and Defendants Aldridge and Collier's Motion should be granted in part and denied in part. Plaintiffs' claims against Defendants Matthew Aldridge, Ken Collier, and Stanley Hubbell will be dismissed with prejudice.

## I.    BACKGROUND

In October 2005, the vessel M/V Nauti Girl, docked in Cozumel, Mexico, was severely damaged and sank due to the effects of Hurricane Wilma. The owners of the ship, Paul and Janet Spielvogel, both residents of Texas, filed a claim for their loss. They

claimed that they entered into an agreement with several insurance companies and their agents to purchase insurance prior to the Hurricane. Their claim was denied and their insurance coverage was cancelled.  In January 2006, the Spielvogels filed suit in the 127th District Court of Harris County against T.L. Dallas (Special Risks) Ltd ("TL Dallas"), an underwriter; Elton Porter Marine Insurance Agency, Inc. ("Elton Porter"), the Spielvogels' insurance agent; and American Marine Insurance Services ("American Marine"), the broker that acted between Elton Porter and TL Dallas.  In November 2006, TL Dallas and Great Lakes Reinsurance (UK) PLC ("Great Lakes")[1] filed a cross-claim against American Marine and Elton Porter for contribution and indemnity. In May 2007, a trial was held to resolve the claims not earlier dismissed by summary judgment.  The state court declared a mistrial.  That same day, TL Dallas and Great Lakes entered into a settlement agreement and asked the state court to stay the litigation until May 2008.  In the settlement agreement, the Spielvogels assigned any rights and claims they had as a result of the incident, giving rights to the litigation to TL Dallas and Great Lakes.  The court entered the requested stay in an order in May 2007. In August 2007, TL Dallas and Great Lakes, as assignees of the Spielvogels' claims, filed a Notice of Nonsuit Without Prejudice in the state court as to the entirety of that lawsuit.

Also in August 2007, TL Dallas and Great Lakes, acting as assignees, filed the instant lawsuit in this Court under diversity jurisdiction asserting against Elton Porter and American Marine the exact same claims that the Spielvogels had brought in state court. The Court dismissed TL Dallas and Great Lakes' claims against Elton Porter and American Marine and granted Plaintiffs' Motion to amend the complaint and add new

---

[1] It is not clear from the record when Great Lakes became a defendant in the state lawsuit.  They were not named as a defendant in the Spielvogels' original petition.  Parties appear to agree, however, that at some point, Great Lakes was brought in as a defendant.

parties. (Order, Doc. No. 14.) Subsequently, Plaintiffs filed their Second Amended Complaint and joined Matthew Aldridge, Ken Collier, and Stanley Hubbell (collectively "Individual Defendants"). At all material times, Ken Collier was vice-president of Elton Porter, and testified in the state litigation for Elton Porter; Matthew Aldridge was an agent and an employee of Elton Porter; and Stanley Hubbell was president and agent of American Marine.

In their Second Amended Complaint, Plaintiffs alleged two new claims: fraud and negligent misrepresentation. (Pl. 2d Am. Compl., 10; Mot. Hr'g, Aug. 26, 2008.) Plaintiffs contend that the Individual Defendants were acting outside the course and scope of their duties as employees of their respective companies. *Id.* Specifically, Plaintiffs claim that the subject insurance binder was issued on September 26, 2005, as a result of Collier and Hubbell's negligent failure to adequately supervise and/or train Aldridge. (Pl. 2d Am. Compl., Doc. No. 15, at 4.) Plaintiffs claim that Defendants were negligent in their supervision "and/or failing to discover the mistake [Aldridge] wrongfully made at the expense of Plaintiffs." *Id.* Plaintiffs further claim that Defendants fraudulently concealed material facts. (Doc. No. 15, at 10-11.) Individual Defendants argue that Plaintiffs' current claims are barred by res judicata, collateral estoppel, and statutes of limitations.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## II. PERSONAL JURISDICTION

Hubbell claims that he does not have minimum contacts with the State of Texas. He provides little evidence to support this defense. Hubbell, a California resident, is president, and registered agent, of American Marine, a California corporation that has appeared in this case. Hubbell does not appear to have waived his jurisdictional defense

through active litigation. First, he filed his objection to personal jurisdiction with his answer. *See Brokerwood Intern. (U.S.), Inc. v. Cuisine Crotone, Inc.*, 104 Fed. App'x 376, 380 (unpublished) (5th Cir. 2004) (explaining that waiting to file a motion to dismiss until after the motion for summary judgment had been denied was too late); *US LED, Ltd. v. Nu Power Associates, Inc.*, C.A. 04:07-0783, 2008 WL 4838851 *2 (S.D. Tex. Nov. 5, 2008) (collecting cases and holding that defendant's delay of four months between the answer and the motion to dismiss did not waive the 12(b)(2) personal jurisdiction defense). Second, Hubbell has not conducted significant litigation activity without reasserting the defense. All of the litigation activity prior to the Second Amended Complaint involved his actions as a corporate representative of American Marine, and, as discussed below, these activities are not imputed to Hubbell as an individual. Subsequent to the Second Amended Complaint, Hubbell appeared at a Motion Hearing at the Court's request to discuss the individual Defendants' Motions to Dismiss. Hubbell has not waived this defense.

When, as here, the Court did not conduct an evidentiary hearing regarding defendant's motion to dismiss, the party seeking to assert jurisdiction is required only to present sufficient facts to make out a *prima facie* case supporting jurisdiction. *See, e.g., Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003); *Alpine View Co. v. Atlas Copco A.B.*, 205 F.3d 208, 214 (5th Cir. 2000). The Court accepts as true that party's uncontroverted allegations in the complaint and resolves in its favor all conflicts between the facts contained in the parties' affidavits and other documentation (so long as the allegations are not merely conclusory). *See Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d at 380; *Travelers Indem. Co. v.*

4

*Calvert Fire Ins. Co.*, 798 F.2d 826, 831 (5th Cir. 1986). The Due Process Clause of the Fourteenth Amendment permits a court to exercise personal jurisdiction over a nonresident defendant when "(1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The minimum contacts requirement can be met through contacts sufficient to confer either specific or general jurisdiction. *Cent. Freight Lines, Inc.*, 322 F.3d at 381. Specific jurisdiction exists "[w]hen a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* (internal quotation marks omitted).  General jurisdiction can be exercised when a defendant's contacts with the forum state are substantial, continuous, and systematic, though unrelated to the litigation. *Id.*

A court has specific jurisdiction over a cause of action when "the defendant's contacts with the forum 'arise from, or are directly related to, the cause of action.'" *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002) (quoting *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001)).  Simply entering a contract or conducting contract negotiations with a resident of the forum state is insufficient to subject the nonresident defendant to the forum's jurisdiction. *See Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026, 1029 (5th Cir. 1983); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986). In addition, in the tort context, the fact that a plaintiff's alleged tort occurred in

Texas, without further information, is not dispositive of the jurisdictional analysis. *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 288-89 (1980)). However, even very few contacts with the forum can establish personal jurisdiction if the content of the communication with the forum gives rise to intentional tort causes of action. *See Wien Air Alaska v. Brandt*, 195 F.3d 208, 213, 215 (5th Cir. 1999) (finding personal jurisdiction over a non-resident defendant for a fraud claim); *Lewis v. Fresne*, 252 F.3d at 358-59; *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). Where a defendant knows or can reasonably foresee that the impact of his alleged actions will cause harm in the forum state, courts find personal jurisdiction. *See Calder v. Jones*, 465 U.S. 783, 789-90 (1984).

In general, a corporation will serve to insulate individual employees from a court's personal jurisdiction under the fiduciary-shield doctrine. *See Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985); *Organics Metals v. Aquasium Technologies, Ltd.*, No. 3:03-cv-3062-H, 2004 WL 718960 * 3 (N.D. Tex. Apr. 2, 2004); 4A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE §1069.4 (3d. Ed. 2002). The doctrine does not apply when the corporation is the alter-ego of the defendant, *Stuart v. Spademan*, 772 F.2d at 1197-98, or if the individual's actions are motivated by fraud and/or personal interest outside of his corporate capacity. *See Lewis v. Fresne*, 252 F.3d at 369 n.6 (holding the fiduciary-shield doctrine did not apply where store owner misled plaintiff to secure a loan sufficient to keep the store solvent); *Stuart*, 772 F.2d at 1198 n.2 (holding, in a breach of contract case, that the corporation was not the alter-ego of the individual defendant such that its contacts with the forum state could be attributed to the individual).

Where a plaintiff alleges that an individual defendant persuaded other defendants to breach an agreement, and, in so doing, tortiously interfered with a corporate plaintiff's agreement, the fiduciary-shield doctrine does not apply. *See Optimum Return LLC v. CyberKatz Consulting, Inc.*, No. Civ.A.3:03-CV-1064D, 2004 WL 827835, *3 (N.D. Tex. Mar. 26, 2004). Similarly, where a plaintiff makes out a *prima facie* case of fraud arising from statements surrounding the formation of a contract or business relationship in general, the fiduciary shield does not operate. *See, e.g., General Retail Services, Inc. v. Wireless Toyz Franchise, LLC*, 255 Fed. Appx. 775, 795, 2007 WL 2909565, *18 (5th Cir. Oct. 5, 2007); *Double G Energy, Inc. v. At Gas Gathering, Inc.*, No. Civ.A.3:05-CV-0749-P, 2005 WL 1837953, *5 (N.D.Tex. July 28, 2005); *Intermed Laboratories, Inc. v. Perbadanan Geta Felda*, 898 F.Supp. 417, 420 (E.D.Tex. 1995); *Carlisle v. Sotirin*, No. Civ.A.04-1549, 2005 WL 78938, *4 (E.D.La. Jan. 11, 2005). Courts, however, do not rely on plaintiff's claims and investigate the factual allegations underlying the claim to determine whether fraud was pled with sufficient particularity. *See Organics Metals*, 2004 WL 718960 *4 (finding that the fiduciary shield doctrine applied). In *Organics Metals*, the plaintiff alleged fraud and misrepresentation, but the court found that defendants presented uncontroverted evidence that their representations were subject to contractual preconditions, and because the plaintiff did not allege evidence that it met those preconditions, the court found insufficient evidence of fraud and applied the doctrine. *Id.*

Here, Plaintiffs allege that Hubbell committed two torts with effects in Texas: negligent misrepresentation and fraud connected with the issuance of an insurance binder in Texas. In their Amended Complaint, Plaintiffs assert that the insurance binder was

issued as a result of Hubbell's negligent failure to supervise and/or train Aldridge and failed to discover the mistake he purportedly made. (Pl. Am. Compl. 4.) In addition, Plaintiffs assert that these torts occurred outside of Hubbell's capacity as a corporate agent, but Defendants have rebutted that contention by noting that there is no evidence in the record to support this contention. (Mot. Hr'g, August 26, 2008.) Plaintiffs have not met their burden of establishing evidence sufficient to support a claim of fraud because they have identified no material misrepresentations that he knew were false at the time made[2] or that he was acting for his own personal benefit. Plaintiffs have failed to present a prima facie case of personal jurisdiction. The Court holds that it has no personal jurisdiction over Hubbell, and his Motion to Dismiss based on this ground should be granted.

## III. PRECLUSIVE EFFECT OF PRIOR STATE LITIGATION

The three individual Defendants contend that their claims are barred by res judicata and/or collateral estoppel. Plaintiffs respond that because the individual Defendants were not parties to the underlying state litigation or the previous federal litigation, and Plaintiffs have identified new facts, Plaintiffs' claims against them are not barred.

### A.    Motion to Dismiss Standard

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6) (2008).  When considering a Rule 12(b)(6) motion to dismiss, a court must "accept the complaint's well-pleaded facts as true and

---

[2] Under Texas law, the elements of fraud are: (1) a material misrepresentation was made; (2) it was false; (3) the speaker knew it was false when made; (4) the representation was made that it should be acted upon by the other party; (5) the other party acted in reliance; and (6) the other party suffered injury. *Dow Chemical Co. v. Francis* 46 S.W.3d 237, 242 (Tex. 2001).

view them in the light most favorable to the plaintiff." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*,   503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)). Although the Court generally considers a motion to dismiss for failure to state a claim based on the face of the Complaint, the Court may also take notice of matters of public record when considering a 12(b)(6) motion. *See Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995); *Cinel v. Connick*, 15 F.3d 1338, 1343 n. 6 (5th Cir. 1994).

### B.      Res Judicata and Collateral Estoppel

As discussed in its previous Order, affirmative defenses such as res judicata and collateral estoppel generally should not be discussed in a motion to dismiss. Given the record already developed by the start court, it is appropriate to discuss them at this stage of this litigation. (Doc. No. 14, at 3-4.)

Plaintiffs reassert their argument that no final judgment has been entered by the court in the underlying state case. Plaintiffs also argue that their claims against the individual Defendants are not barred because there are new parties and new claims and, therefore, these claims were not fully litigated in the underlying state suit. Plaintiff allege that they recently learned that Aldridge, while at Elton Porter, issued a binder indicating that the Spielvogels had coverage prior to Hurricane Wilma, without receiving approval through the proper channels at American Marine. (Motion Hearing, Aug. 26, 2008.) They also claim that Elton Porter's president, Collier, learned at a deposition taken for the state

court proceedings, that someone, likely Aldridge, fraudulently signed Collier's name on

that binder. *Id.* The Court asked Plaintiffs whether they discovered the issue of the

allegedly fraudulent signature in 2006. Plaintiffs' counsel responded that he could have

investigated the issue further at the time but chose not to:

> Correct. The cover-up wasn't found out about in 2006. And, quite
> frankly, I can't sit here and tell you when they found out about it.
> … And at the time all three of the defendants at that time,
> including my clients, we were pretty much cooperating with one
> another. Nobody was hurling mud. We really did not—I guess we
> could have, but chose not to, because we were trying to present a
> unified front and a unified defense. So, there were a lot of
> questions that I could have asked Mr. Aldridge that I didn't get a
> chance to after these—that deposition was taken, because he was
> summarily dismissed after he gave somewhat decent testimony for
> all three of the original defendants.

*Id.*

The Court finds that the doctrines of collateral estoppel and res judicata bar relitigation of

these "new" facts, and also bar relitigation of new claims that could have been asserted

out of facts known at the time of the state lawsuit.

### a. Res Judicata

The Court finds that some of Plaintiffs' claims against the individual Defendants

are barred by res judicata. "A federal court asked to give res judicata effect to a state

court judgment must apply the res judicata principles of the law of the state whose

decision is set up as a bar to further litigation." *E.D. Systems Corp. v. Southwestern Bell

Tel. Co.*, 674 F.2d 453, 457 (5th Cir. 1982). Res judicata or claim preclusion "precludes

relitigation of claims that have been finally adjudicated, or that arise out of the same

subject matter and that could have been litigated in the prior action." *Hallco Texas, Inc.

v. McMullen County*, 221 S.W.3d 50, 58 (Tex. 2006); *Amstadt v. U.S. Brass Corp.*, 919

S.W.2d 644, 652 (Tex. 1996).

> Under Texas law, res judicata requires proof of:
>
> (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action.

*Id.* Parties can be considered in privity if they are "successors in interest, deriving their claim through a party to the prior claim." *Id.* at 653. As discussed in its previous Order, the Court finds that there was a prior final judgment on the merits of Plaintiffs' claims against the organizational Defendants and the current Plaintiffs stand in the same position as the Spielvogels in the underlying state lawsuit. Plaintiffs argue that the individual Defendants were acting outside of the scope of their duties and therefore claims against them are not barred by the claims already disposed of against their employers. (Aug. 26, 2008, Mot. Hr'g.)

There is no general definition of privity that applies to all res judicata cases, and therefore, each case is analyzed based on its circumstances. *Getty Oil Co. v. Insurance Co. of N. Am.*, 845 S.W.2d 794, 798 (Tex. 1992). Privity constitutes those who, in law, are so connected with a party to a judgment that the party to the judgment represented the same legal right. *Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 363 (Tex. 1971). There are at least three ways people can establish privity with another: (1) they can control an action even if they are not parties to it (2) their interests can be represented by a party to the action; (3) they can be successors in interest, deriving their claims through a party to the prior action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 654 (Tex. 1996); *Getty Oil Co.*, 845 S.W.2d at 800. A party's status as an officer of a corporation does not necessarily create privity with the corporation absent further evidence. *See Texas Capital Sec. Mgmt., Inc. v. Sandefer,* 80 S.W.3d 260, 266 (Tex.App.-Texarkana 2002, pet. struck)

(denying summary judgment on the issue of privity where appellee provided no evidence that the individual defendants were involved in the prior lawsuit involving their corporation or that they were officers during the pendency of the prior lawsuit). Generally, an employer is vicariously liable for the actions of its employees committed in the course and scope of their employment and when parties are in a vicarious relationship, a judgment for the principal binds the agent. *Soto v. Phillips*, 836 S.W.2d 266, 270 (Tex.App.—San Antonio 1992, writ denied), *superceded by statute on other grounds*; *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 617 (Tex. 1999); *Miller v. State & County Mut. Fire Insur. Co.*, 1 S.W.3d 709 (Ct. App. Tex.—Fort Worth 1999, writ denied) (holding that officers of company were in privity with their company such that collateral estoppel applied). Therefore, if the plaintiff suffers harm from actions outside the scope of the defendant's employment, a judgment against an employer will not bar further litigation against the employee. *Hammonds v. Holmes*, 559 S.W.2d 345, 347 (Tex. 1977).

Here, two of the individual Defendants were directing the action in the prior lawsuit: Hubbell was president and agent of American Marine. In addition, no party has specifically disputed that his acts complained of in the state lawsuit and this lawsuit against the American Marine and Elton Porter arose because of actions undertaken in his capacity as an agent of American Marine. Plaintiffs' bare contention that all the individual Defendants were acting outside of the scope of their employment is not supported by any facts relating to Hubbell or Collier, including the "new" facts raised in the Second Amended Complaint. Likewise, Collier was the vice-president of the

company, and for purposes of the state lawsuit, he acted as the corporate representative of Elton Porter.

The policies behind res judicata reflect the need to bring all litigation to an end, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery. *Barr v. Resolution Trust Corp. ex rel. Sunbelt Federal Sav.*, 837 S.W.2d 627, 629 (Tex. 1992). Texas has adopted the transactional approach to res judicata and therefore a subsequent suit will be barred if it arises out of the same subject matter as a previous suit and which, through the exercise of diligence, could have been litigated in a prior suit. *Barr v. Resolution Trust Corp. ex rel. Sunbelt Federal Sav.*, 837 S.W.2d at 631. A transaction "is not equivalent to a sequence of events, however; the determination is to be made pragmatically, 'giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage.'" *Barr*, 837 S.W.2d at 631 (citing the Restatement of Judgments § 24(2)) (holding that a later suit was barred where both suits sought to hold a party liable for the payment of a promissory note although one suit was against the partnership as maker of the note and the other against an individual), *compare Pustejovsky v. Rapid-American Corp.*, 35 S.W.3d 643, 652 (Tex. 2000) (holding that a later suit was not barred where the plaintiff could not have adduced evidence at the time of the first suit that would have allowed him to recover for damages relating to the subject matter in his second suit).

Here, Plaintiffs claims of negligence and fraud regarding Collier and Hubbell could have been raised in the earlier state action. The Court decided that the insurance

binder of September 2005 did not create new coverage and therefore granted Defendants' Motions in the prior lawsuit. As discussed above, in the state lawsuit, Plaintiffs discovered that Aldridge issued the binder even though the Spielvogels had not fulfilled the preconditions for renewing the policy. Consequently, at that time, Plaintiffs could have attempted to assert a negligent supervision claim or a fraud claim: both claims arose out of the renewal of their insurance policy and the binder. The facts underlying those potential claims occurred during the same time, involved the same actors, and formed a convenient trial unit. *See, e.g., Getty Oil Co.*, 845 S.W.2d at 799 (barring a second lawsuit concerning the same contract).

Plaintiffs claim that Matthew Aldridge was acting outside of the scope of his employment because he issued a binder without going through American Marine, as he was supposed to. Because the Court finds that any fact issues that might underlie the "new" claims must have been litigated in the underlying state court litigation, the Court need not reach this issue.

### b. Collateral Estoppel

Plaintiffs' claims are also barred by collateral estoppel. The individual Defendants argue that Plaintiffs have filed several claims that are identical to those raised against Elton Porter and American Marine in the state lawsuit and this lawsuit. Thus, they argue, the facts underlying those claims have been fairly and finally litigated. Plaintiffs respond that the individual Defendants are new parties and therefore no claims were fully and finally adjudicated in their favor.

A federal court looks to state law rules when determining the collateral estoppel effect of a state court judgment. *Matter of Garner*, 56 F.3d 677, 679 (5th Cir. 1995).

"Under Texas law, collateral estoppel 'bars relitigation of any ultimate issue of fact actually litigated and essential to the judgment in a prior suit, regardless of whether the second suit is based upon the same cause of action.'" *Id.* at 681 (citing *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984).).   In *Bonniewell*, the Texas Supreme Court further explained:

> A party seeking to invoke the doctrine of collateral estoppel must establish (1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action.

663 S.W. 2d at 818.

Plaintiffs argue that the facts were not "fully and fairly" litigated in the prior action because the Spielvogels, not TL Dallas and Great Lakes, were the parties who had the opportunity to litigate those facts.   "For collateral estoppel purposes, 'full and fair litigation' means actual litigation in the previous suit of the same fact issues."   48 TEX. JUR. 3D JUDGMENTS § 516; *see also McDonald v. Houston Brokerage, Inc.*; 928 S.W.2d 633, 637 (Tex. App.—Corpus Christi 1996) (citing *Puga v. Donna Fruit Co.*, 634 S.W.2d 677, 678 (Tex. 1982)).   There appears to be no dispute that the only allegedly new facts asserted relate to the claims for negligent misrepresentation and fraud.[3]   Thus, the Court finds that the fact issues, apart from the new facts asserted in the Second Amended Complaint, *supra*, were fully and fairly litigated in the state suit. The joinder of new parties in the second action does not affect the preclusive effect of earlier litigation where

---

[3] In the August 26, 2008 hearing the Court asked Plaintiffs' counsel: "So, what facts in particular were not available to you during the pendency of the state court case that have been revealed now that you think take the individual defendants outside the protection of res judicata."

Plaintiffs: "We have reason to believe, and I can't testify to these, but we have reason to believe that after the binder was issued without our authority, which gave the original insured some solace that he had coverage in the face of Hurricane Wilma, that there was a cover-up. And we didn't find out about it for quite some time."

the litigants in the first action had every incentive to litigate the issue. *Sysco Food Services, Inc. v. Trapnell*, 890 S.W.2d 796, 803 (Tex. 1994).

Defendants argue that the allegedly new facts were litigated in the underlying state lawsuit. The two facts, as far as the Court can ascertain are: (1) Aldridge, while at Elton Porter, issued a binder, indicating that the Spielvogels had coverage prior to Hurricane Wilma, without receiving approval through the proper channels at American Marine; (2) Elton Porter's president, Collier, learned at a deposition taken for the state court proceedings, that someone, likely Aldridge, fraudulently signed Collier's name on that binder. *Id.* Defendants respond that Plaintiffs learned all of these facts in the course of depositions and cite Defendants' Motion for Summary Judgment filed in the state court action. (Doc. No. 25.) For example, testifying via deposition in the state action, Aldridge explained that Mr. Spielvogel represented to him that Aldridge had the authority to issue the binder, and that "everything else was in place" to allow Aldridge to issue the binder. (Doc. No. 25, Ex. H, 32:17-33:6, 33:13-33:22.) Aldridge admitted he did not see any cancellation notice in the binder when he went through it. (Doc. No. 25, Ex. H, 28:14-28:18.) The issue of whether Aldridge misrepresented that the Spielvogels were covered, without receiving approval from American Marine, was addressed in the underlying state litigation because the state court decided that the binder did not create new coverage and granted Defendants Elton Porter and American Marine's No Evidence Motions for Summary Judgment on that basis. The state court's judgment about whether the binders were issued with proper authority was necessary to the judgment of the underlying claims.

In addition, the purportedly new claim of fraud necessarily involves fact issues that were fully and fairly litigated in the prior Texas litigation. Under Texas law, the elements of fraud are: (1) a material misrepresentation was made; (2) it was false; (3) the speaker knew it was false when made; (4) the representation was made that it should be acted upon by the other party; (5) the other party acted in reliance; and (6) the other party suffered injury. *Dow Chemical Co. v. Francis* 46 S.W.3d 237, 242 (Tex. 2001); *Jackson v. Speer*, 974 F.2d 676, 679 (5th Cir.1992); *Intermed Laboratories, Inc. v. Perbadanan Geta Felda*, 898 F.Supp. 417, 420 n.6 (E.D.Tex. 1995). As explained before, whether Aldridge knowingly made a material misrepresentation was already a fact issue that must have been litigated in state court. Testifying via deposition, Aldridge explained that when he issued the binder, but did not see the cancellation notice. Again, the state court's judgment about whether the binders were issued with proper authority was necessary to the judgment of the underlying claims.

Plaintiffs' arguments regarding collateral estoppel focus primarily on their role in the prior lawsuit. To satisfy the third prong for purposes of collateral estoppel, "it is only necessary that the party against whom the plea of collateral estoppel is being asserted be a party or in privity with a party in the prior litigation." *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1990); *Sysco Food Services, Inc. v. Trapnell*, 890 S.W.2d 796 at 801-02 (Tex. 1994); *Indemnity Ins. Co. v. City of Garland*, 258 S.W.3d 262, 271 (Tex. App.—Dallas 2008, n.w.h.). Plaintiffs bring their claims in this lawsuit as the assignees of the Spielvogels, and thus step directly into the Spielvogels' shoes as a party in the prior litigation.

Because the alleged facts Plaintiffs seek to litigate in this lawsuit were fully and fairly litigated in state court, because there is no dispute that those alleged facts were essential to the judgment in the first litigation, and because the parties can be considered adversaries in the state court suit, Plaintiffs' claims are also barred by collateral estoppel.

## IV. SANCTIONS

Aldridge and Collier move for sanctions under FED. R. CIV. P. 11 and 28 U.S.C. § 1927. They argue that sanctions are appropriate where counsel's actions are completely without merit and therefore actions must have been undertaken for an improper purpose. They assert that Plaintiffs have pursued litigation that is factually groundless, brought to harass, vex, and/or coerce Elton Porter and individual Defendants into an unwarranted settlement, and increase the cost of litigation with reckless indifference to the truth. Plaintiffs respond that they did not forum shop. They also complain of procedural defects: they contend that a request for sanctions must be made as a separate motion, and that counsel should provide informal notice to the other party prior to proceeding.

Under Rule 11, the court must identify some federal filing in which the counselor violated the rule that claims must be well-grounded in fact and in law, and their filings were not submitted for an improper purpose. FED. R. CIV. P. 11; *Edwards v. General Motors Corp.*, 153 F.3d 242, 245 (5th Cir. 1998). The court must examine "whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990). The court considers three issues: (1) factual questions regarding the attorney's pre-filing inquiry and factual basis of the filing (2) legal issues of whether the filing is warranted by existing law or a good faith argument (3) discretionary issues regarding an appropriate sanction. *See Id.* at 399;

*St. Amant v. Bernard*, 859 F.2d 379, 381-82 (5th Cir. 1988). Plaintiffs correctly assert that a motion for sanctions must be made separately from any other motion and specifically describe the conduct that allegedly violates Rule 11(b). FED. R. CIV. P. 11(c)(2). Defendants combined their Motion for Sanctions with their Motion to Dismiss and did not indicate the specific conduct that allegedly violates 11(b). Further, they apparently did not allow Plaintiffs 21 days to withdraw the offending paper or claim. FED. R. CIV. P. 11(c)(2). Defendants' Motion for Rule 11 Sanctions should therefore be dismissed for failure to comply with the requirements as provided under that rule. The Court stated its unfavorable view of sanctions in the August 26, 2008 hearing, and urges the parties to let matters lie.

In order to assess sanctions under 28 U.S.C. § 1927, the court must find that there is evidence of recklessness, bad faith, or improper motive that unreasonably and vexatiously multiplied the proceedings. *See Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.*, 38 F.3d 1414, 1416-17 (5th Cir. 1994) (upholding sanctions where counsel waited a year to file a motion for reconsideration allegedly based on new evidence that was, in fact, long public knowledge, and attempted to impugn the judge's impartiality and malign the character and professionalism of attorneys unrelated to the case); *Edwards* 153 F.3d at 247 (upholding sanctions where attorney admitted that she knew she had no case and intended to abandon it but filed procedural motions to encourage the defendant to incur fees defending the case on the merits). Section 1927 is strictly construed in favor of the party against whom sanctions are sought to avoid dampening "the legitimate zeal of an attorney representing his client." *Id.* at 1417; *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525-26 (5th Cir. 2002). The

decision to impose sanctions is committed to the discretion of the district court. *Id.* at 1417. The court uses repeated filings despite warnings from the court, or other evidence of excessive litigiousness to support sanctions. *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525-26 (5th Cir. 2002). For example, an attorney was sanctioned where he was denied leave to amend four times and eventually filed another case alleging the same claims, filed several other documents attempting to add the same parties and same cause of action, received contempt warnings at trial, and informed defense counsel that he would continue to pursue the litigation to generate fees. *Cambridge Toxicology Group, Inc. v. Exnicios*, 495 F.3d 169, 180-81 (5th Cir. 2007). As the Court has not issued such warnings and in fact allowed Plaintiffs to add other parties and allege its ostensibly new facts, the Court will deny Defendants' Motion for Sanctions under § 1927. Without specific proof of conduct such as that used to support sanctions under the applicable law, the Court will not sanction Plaintiffs at this time. The Court believes Plaintiffs have not acted in bad faith and believes that any consequences that follow from the rulings in this case will encourage good faith investigation of the applicable law and facts in the future.

## V. CONCLUSION

For the foregoing reasons, Defendant Hubbell's Motion to Dismiss (Doc. No. 22) is **GRANTED**. Defendants Aldridge and Collier's Motion to Dismiss and Motion for Sanctions (Doc. No. 20) is **DENIED** as to their claim for sanctions and **GRANTED** as to their motion to dismiss Plaintiffs' claims. Plaintiffs claims are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

SIGNED this 22nd day of December, 2008.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE